745 F.2d 553
 117 L.R.R.M. (BNA) 2786, 102 Lab.Cas. P 11,427,
5 Employee Benefits Ca 2347
 Wayne C. IRWIN, Plaintiff-Appellee,
v.
CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA;
Carpenters Pension Trust Fund for Northern California;
Carpenters Vacation and Holiday Trust Fund for Northern
California; and Carpenters Apprenticeship and Training
Trust Fund for Northern California, Defendants-Appellants.
 No. 83-2283.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1984.
Decided Oct. 17, 1984.
 
 Robert M. Hirsch, Van Bourg, Allen, Weinberg, & Roger, San Francisco, Cal., for defendants-appellants.
 Patricia S. Radez, Schacter, Kristoff, Ross, Sprague & Curaile, San Francisco, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED and FLETCHER, Circuit Judges and KENYON*, District Judge.
 KENYON, District Judge:
 Defendant Trust Funds appeal from an order granting plaintiff's motion for summary judgment.
 I. FACTS
 Wayne C. Irwin ("Irwin") was a sole proprietor general contractor performing construction work in Northern California at all times relevant to this lawsuit. On March 9, 1972, he executed a memorandum agreement that bound him to the 1971-1974 Carpenters Master Labor Agreement ("MLA"). Irwin had previously been part of the 1965-1968 and 1968-1971 MLAs. The 1971-1974 MLA provided for contributions to four trust funds, defendants-appellants in this action. Also, Section 34 of the MLA provided that the MLA "shall remain in full force and effect ... unless either party within sixty (60) days prior to the 15th day of June 1974 ... serves written notice on the other of its desire to change, modify, amend or supplement this agreement."
 On or about July 1, 1972, Irwin gave written notice to the Carpenters Union ("Union") pursuant to Section 34 that he wished to cancel his collective bargaining agreement. Irwin understood that this termination would be effective immediately or, in the alternative, at the expiration of the present MLA (June 15, 1974). Irwin filed the pending action on March 3, 1983, in Monterey County Superior Court, Case No. 79036, seeking a declaration that he had effectively terminated his obligations under the memorandum agreement and the MLA. The Trust Funds removed the case to the Federal District Court for the Northern District of California. On July 26, 1983, the district court granted Irwin's motion for summary judgment, finding that the written notice Irwin gave the Union on July 1, 1972, was effective as of June 15, 1974, to terminate his contractual obligations to the Trust Funds. In reaching this determination, the district court found, inter alia, that the termination notice given prior to the designated cancellation period nevertheless had the legal effect of canceling the contractual obligations.
 II. DISCUSSION
 The proper interpretation of language on the face of a contract is a matter of law and fully reviewable by the appellate court. Taylor-Edwards Warehouse & Transfer Co. v. Burlington Northern, 715 F.2d 1330, 1333 (9th Cir.1983).
 It is undisputed that Irwin's letter of termination was not served upon the Union within the period designated in the MLA. Section 34 of the Agreement states in full:
 This Agreement shall remain in full force and effect from the 15th day of June, 1971, through the 15th day of June, 1974, and shall continue threafter [sic] unless either party within sixty (60) days prior to the 15th day of June, 1974, or sixty (60) days prior to the 15th of June of any subsequent year serves written notice on the other of its desire to change, modify, amend or supplement this Agreement.
 While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional conditions or benefits except at the time and in the manner provided above.
 (Emphasis added.) Irwin's July 1, 1972 notice of termination was served almost two years prior to the start of the designated notice period. The issue presented on appeal is whether this premature notice is nevertheless sufficient to terminate Irwin's obligation to the Trust Funds.[1]
 This action involves a dispute over the application or interpretation of a collective bargaining agreement and accordingly falls within the purview of Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1982). In the interest of developing a uniform federal labor policy, the Supreme Court has stated that "[t]he dimensions of Sec. 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." Local 714, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593, 599 (1962). However, state court authorities may be relied upon if they are compatible with the purpose of Sec. 301 and will best effectuate federal labor policy. Lincoln Mills, 353 U.S. at 457, 77 S.Ct. at 918, 1 L.Ed.2d at 981 (1957). The district court relied upon Lincoln Mills in finding that California law would effectuate federal labor policy in this instance. Specifically, the district court found that the California principle of validating premature termination notice[2] would effectuate the federal labor policy of requiring a minimum notice period before a labor agreement may be terminated.
 When notice of termination is given two years before an agreed upon notice period, compliance with a minimum notice period is not at issue. Instead, the rules of contract construction imposed by federal labor policy must be the focus of inquiry. Generally, a collective bargaining agreement is not governed by strict contract rules because such an agreement is more in the nature of "a generalized code [designed] to govern a myriad of cases which the draftsman cannot wholly anticipate." United States Steel Workers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409, 1415 (1960). We are not, however, confronted with a provision that is intentionally ambiguous in recognition of the provision's inability to anticipate every situation that may arise. To the contrary, at issue in this case is a narrowly tailored clause that specifically states that notice preventing automatic renewal must be served within the last sixty days of the term of the agreement.
 When such clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language. Two cases referred to by the district court as suggesting a federal policy of minimum termination notice requirement, Scenic Land Properties, Inc. v. Carpenters Local 612, 87 Lab.Cas. (CCH) p 11,690, 103 L.R.R.M. (BNA) 2127 (N.D.Cal.1979), aff'd without opinion, 661 F.2d 942 (9th Cir.1981) and Construction Teamsters Health and Welfare Trust v. Con Form Construction, 657 F.2d 1101 (9th Cir.1981), more strongly indicate a policy of strict construction of clear terms. In Scenic Land Properties, 87 Lab.Cas. at p. 22,786, the court strictly construed the terms of a Memorandum Agreement requiring the employer to "comply with the wages, hours and working conditions as set forth in ... the Carpenters Master Agreement ... and any modifications, changes, extensions or renewals of or to said Master Agreement." Accordingly, the employer was held bound by a subsequent MLA agreement that was almost identical, because the court found the changes did constitute a modification. Id. at p. 22,787. Similarly, in Con Form Construction, the court construed the language of a Short Form Agreement in holding that the employer was bound by a modification of the MLA. The relevant contractual clause clearly provided that the employer was bound by "all renewals, changes or modifications...." The court distinguished Seymour v. Coughlin, Co., 609 F.2d 346 (9th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980), where the employer was held not bound by a modification of the MLA. In Coughlin, the Short Form Agreement provided that it would continue in effect for "any renewals or extensions" of the MLA unless written notice of termination was given. 609 F.2d at 349. In contrast to Con Form, no reference was made to modification in this automatic renewal clause.[3] Accordingly, the Short Form Agreement terminated upon modification of the MLA. Coughlin, 609 F.2d at 350.
 Although the employers in Scenic Land Properties and Con Form both failed to give notice of termination, they were held bound by the new modified MLA's because their Agreements so provided, and not because a minimum notice of termination was required. In accordance, the employer in Coughlin also gave no notice of termination but was held not bound by the new modified MLA because his agreement did not so provide.
 Other circuits also have strictly construed clear language in collective bargaining agreements. In NLRB v. R.J. Smith Construction Co., 545 F.2d 187, 192 (D.C.Cir.1976), the court addressed a termination clause that required notice in writing at least three months prior to the expiration of the agreement and stated, " 'The time and manner of exercising a power of termination [of a contract] may be specified in the contract; in such case an attempt to exercise it otherwise will be ineffective (emphasis added).' " (quoting 6 Corbin on Contracts, Sec. 1266, p. 65 (2d ed. 1962)). The court simply gave legal effect to the clear terms of the contract. Similarly, in Local 433, United Brotherhood of Carpenters v. NLRB, 509 F.2d 447, 450-51 (D.C.Cir.1974), the court confronted what it termed "a straight-forward work preservation clause" and found that "[h]aving agreed to this, [the general contractor] was under an obligation to live up to it...." The Fifth Circuit applied the same strict construction approach in NLRB v. South Central Bell Telephone Co., 688 F.2d 345 (1982), cert. denied, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). In that case, the court found no language in the labor agreement supporting a finding that a 1974 arbitration decision was incorporated into a 1977 agreement and noted that no-strike clauses and grievance/arbitration procedures "should be interpreted based on their plain and literal meaning so as to avoid interference with the private bargain." Id. at 353.
 The reason federal policy necessitates the strict construction of clear labor agreement terms is evident. The "basic theme" of federal policy governing labor contracts is "that through collective bargaining the passions, arguments, and struggles of prior years would be channeled into constructive, open discussions leading, it was hoped, to mutual agreement." H.K. Porter Co. v. NLRB, 397 U.S. 99, 103, 90 S.Ct. 821, 823, 25 L.Ed.2d 146, 151 (1970). The formation of such agreements "is typically characterized by intense bargaining and the final contract usually represents hard-fought negotiations and compromises." South Central Bell Telephone, 688 F.2d at 352. Judicial rewriting of labor contract terms that are clear in both the language used and situations addressed would undermine this private bargaining process which federal labor policy promotes.
 There is nothing in the record indicating that Section 34 of the MLA was a product of fraud, duress, or mistake. Also, neither party challenged the reasonableness of this notice provision. Absent such a challenge to the sixty-day notice period, this court finds the state law applied by the district court incompatible with the federal policy of strictly interpreting unambiguous terms in labor agreements. Irwin's notice was ineffective to terminate the agreement.[4]
 Reversed and remanded.
 
 
 
 *
 Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 At oral argument, Irwin raised for the first time the argument that notice of termination is not covered by Section 34 because that precise term is not used. Because this argument was not raised in the district court, we do not consider it here. See Seymour v. Coughlin Co., 609 F.2d 346, 348-49 (9th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980)
 
 
 [2]
 The Court found this principle of California law established in Taresh v. California Canning Peach Growers, 3 Cal.2d 686, 45 P.2d 964 (1935) and Morganthaler v. Krieg, 101 Cal.App. 436, 281 P. 692 (1929)
 
 
 [3]
 Another provision of the Short Form Agreement did state that the employer was bound by terms of the MLA "in effect in the area in which the work is performed as recognized, modified and renewed from time to time through collective bargaining." Coughlin, 609 F.2d at 349 (emphasis added). This court found, however, that this provision was not relevant to the issue before the court--whether the MLA's modification had terminated the employer's obligation--because the provision was solely jurisdictional in nature
 
 
 [4]
 Since Irwin's notice of termination was ineffective as a matter of law, it is unnecessary for this court to address the other issues presented on appeal